509 A.2d 922

Kenneth E. Bower, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs October 24, 1985, to Judges MacPhail, Doyle and Barry, sitting as a panel of three.

*Mark D. Newberger, Leonard M. Sagot Associates,* for petitioner.

*G. Roger Bowers,* with him, *Vincent J. Walsh, Jr.,* for intervenor, Southeastern Pennsylvania Transportation Authority.

No appearance for respondent.

Opinion by Judge Barry, May 19, 1986:

Kenneth Bower, the claimant, appeals an order of the Unemployment Compensation Board of Review (Board) which affirmed a decision of a referee denying the claimant benefits on the grounds that he had engaged in willful misconduct.

The claimant had been a superintendent for the Southeastern Pennsylvania Transit Authority (SEPTA). At the time of the incident in question, the claimant was in charge of maintenance of the Market-Frankford elevated train system and the Media-Sharon Hill trolley lines. It is the claimant's conduct in his capacity as a superintendent during a snowstorm that is at the heart of the present controversy.

On March 8, 1984, the claimant began work at approximately 6:00 a.m. That day, the weather forecast called for snow sometime late in the day. Because the elevated trains were especially susceptible to problems arising from the snow, the claimant's superior issued an order at a staff meeting that protective covers should be installed on the trains powering the elevated lines. The claimant informed his charges of this order and directed the operation to be carried out. The claimant was aware that covers for all of the trains were not on hand at the shop; he made arrangements that covers be delivered so that they might be installed. The claimant left work at approximately 5:00 p.m. At that time, according to the claimant's testimony, the snowfall was light. In anticipation of a heavier snowfall during the night, the claimant went to bed at 8:00 p.m.; before retiring, however, he testified he looked outside and saw that it had stopped snowing.

During the night, the snowfall increased, eventually requiring SEPTA to declare what it designated as a Level 2 snow emergency. The claimant was called by a foreman at the 69th Street terminal who informed the claimant that a number of problems had developed because of the snow. Claimant arrived at the terminal at approximately 5:15 a.m. and found the situation to be quite chaotic. The claimant worked all day and left for home at 5:15 p.m.

On March 11, the claimant's superiors received complaints concerning his handling of the situation during the snowstorm. The claimant was relieved of his duties pending an investigation. Ten days later, the claimant was suspended for sixty days without pay. The claimant filed an application for benefits. Following a hearing, the referee denied benefits, finding that the claimant's conduct rose to the level of willful misconduct. The Board affirmed and this appeal followed.

The legal conclusion that the claimant had engaged in willful misconduct is essentially bottomed on the following findings of fact:

3. Claimant was responsible for the maintenance of all equipment, directing activities, anticipating and solving all problems in connection therewith, and for establishing procedures to be followed by his subordinates.

4. Claimant was employed in an upper-level capacity and, therefore, held to a higher degree of responsibility. He was 'on call' on a 24-hour day basis for emergencies.

. . .

9. On March 8th, claimant left work and went home about 5:00 PM. He did not remain on the premises to direct the activities and to establish procedures to be followed by his subordinates, or to make sure that no problems developed to impede service on the transit lines.

10. About 10:30 PM on March 8th, the Chief Mechanical Officer called several key locations, to find out what was happening. He spoke to the Car House Foreman at the 69th Street Terminal on the Market-Frankford Elevated line, who was confused about what procedures to follow. The Foreman indicated that one-half of the fleet had protective covers, and those trains were laid up in the Yard. Trains were running on the line without protective covers. The Foreman did not know what to do, and was waiting for instructions.

11. On March 9th, the Chief Mechanical Officer was notified by the Dispatcher that a level 2 Snow Emergency was called. He reported to the Company about 5:00 AM and immediately contacted several key locals. He found that the

trains were running without snow bags and that no more snow bags were available and, as a result, they were losing the Traction Motors. Everyone was in a state of confusion and waiting for instructions of what to do.

12. About 3:30 AM on March 9th, claimant received a telephone call from the Foreman at the 69th Street Terminal, indicating they were losing Traction Motors.

13. Claimant reported to work approximately 5:15 AM and found the 69th Street Terminal in a chaotic state, as many trains had broken-down during the night.

. . .

16. About 8:00 PM on March 9th, the Chief Mechanical Engineer contacted the Foreman at the 69th Street Terminal in an effort to find out what arrangements had been made by the claimant to repair the trains, change the Traction Motors, and recover the damages caused by the snowstorm. The Chief Engineer learned that no preparations were made for extra over-time work, and that things were to proceed as normal, even though a number of cars were lost and the trains were not running on schedule.

(Referee's decision, 5/25/84).

The claimant presents two arguments on this appeal. He argues that the factual findings do not support a legal conclusion of willful misconduct. He also argues that certain of the factual findings are based on uncorroborated hearsay testimony and therefore are not supported by substantial evidence in this record.

In *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 527, 367 A.2d 366, 370 (1976), we stated:

(1) Hearsay evidence, *properly objected to,* is not competent evidence to support a finding of the Board. . . . (2) Hearsay evidence, *admitted without objection,* will be given its natural probative effect and may support a finding of the Board, *if it is corroborated by any competent evidence in the record,* but a finding of fact based *solely* on hearsay will not stand. . . . (emphasis in original) (citations omitted).

At the hearing in this case, SEPTA presented the testimony of two of the claimant's superiors, Sander Pali, a general superintendent (who incidentally testified that he was home ill during both days of the snowstorm) and Jonathan Klein, SEPTA's Chief Mechanical Officer. The claimant's complaint about their testimony is that they testified concerning facts they learned from unnamed employees during their investigation into the claimant's conduct during the snow emergency. At the hearing, the claimant objected to portions of the hearsay evidence introduced; other portions were not objected to. Nonetheless, we agree with the claimant that some of the factual findings, specifically numbers 10, 11 and 16, are supported only by uncorroborated hearsay and therefore cannot stand.

Factual findings numbers 10 and 11 deal with the confusion at the 69th Street terminal during the late evening hours of March 8 and the early morning hours of March 9. Mr. Pali testified, at pages 15-16 of the May 22, 1984 hearing, that the car house foreman at 69th Street testified that the foreman was confused concerning what procedures to follow, that the portion of the fleet that was running was doing so without protective covers and that the portion which was covered was sitting in the yard, that no more snow bags were available, that trains were losing motors as a result, that general confusion was the order of the day and that the foreman

was awaiting instructions, presumably from the claimant. Aside from the portion of finding number 11 concerning the general state of confusion and the fact that trains had broken down during the night, which was corroborated by the claimant's own testimony, none of the other evidence, which was clearly hearsay, is corroborated by any competent evidence in the record. The major portions of these two factual findings must therefore be disregarded.

Similarly, factual finding number 16 deals with the claimant's failure to establish emergency procedures to rectify the problems being encountered as a result of the snowstorm. Mr. Pali testified that he discovered this when he spoke to the foreman at the 69th Street terminal. Unfortunately, the foreman did not testify and the record contains no corroborating competent evidence, again requiring us to disregard this factual finding.

When these findings are disregarded, the remainder of the factual findings simply do not support the legal conclusion that the claimant engaged in willful misconduct. Claimant admitted to leaving the terminal at approximately 5:00 p.m. on March 8. At that time, however, the snowfall was light. Further, he testified that as a foreman, he had received calls during the night on matters much more trivial than the problems being encountered during the night in question. Further, he testified, without contradiction, that as soon as he was informed by the car shop foreman of the problems he got to work as quickly as he could and then worked over twelve hours before going home. Were finding number 16 supported by substantial evidence, we would have little problem affirming the order of the Board; since it is not, however, we have no choice but to reverse the order of the Board denying the claimant benefits.

344

### ORDER

NOW, May 19, 1986, the October 26, 1984 order of the Unemployment Compensation Board of Review at No. B-235437 is reversed.